1
2
3
4
5
6
7
8
9
10
11
12
13
14

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Rafael Martinez, | No.  CV-14-01753-PHX-JAT (JZB) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Charles Ryan, et al., | |
| Respondents. | |

15 TO THE HONORABLE JAMES A. TEILBORG, SENIOR UNITED STATES DISTRICT
16 JUDGE:

17        Petitioner Rafael Martinez has filed a *pro se* Petition for Writ of Habeas Corpus
18 pursuant to 28 U.S.C. § 2254.  (Doc. 1.)

19   **I.    SUMMARY OF CONCLUSION**

20        Petitioner submits numerous arguments in support of his claims that his 2008 trial
21 convictions were unfairly obtained.  Petitioner's claim in Ground One is procedurally
22 defaulted. Petitioner's claim in Ground Seven is not cognizable.   All of Petitioner's
23 remaining claims fail.    Therefore, the Court will recommend the Amended Petition be
24 denied and dismissed with prejudice.

25   **II.   BACKGROUND**

26        **a.  Factual and Procedural History**

27 The Arizona Court of Appeals found the following facts and procedural history as

28

true:[1]

> In the early afternoon of July 25, 2007, Defendant and Nicholas Perez were passengers in the back seat of D.M.'s taxi. When the three-mile trip ended and D.M. requested the fare, Perez pointed a loaded handgun at D.M.'s neck and demanded money. D.M. gave Perez between eleven and thirty dollars and was reaching for more money when Perez ordered him out of the vehicle. D.M. complied. Defendant moved into the driver seat and sped away.
>
> Five to ten minutes later, D.M. called 9-1-1 and gave physical descriptions of the suspects and their clothing. Within thirty minutes, police officers apprehended two suspects within one-half mile of the robbery. The stolen cab was discovered about the same time abandoned behind a nearby shopping center. Shortly thereafter, D.M. identified Defendant and Perez during separately held one-on-one show-ups. Additional details are discussed in the context of the issues addressed below.
>
> Under an accomplice liability theory, the State charged Defendant and Perez each with one count of armed robbery, a dangerous offense and class two felony, and one count of theft of means of transportation, a class three felony. Perez entered into a plea agreement with the State. Defendant's trial resulted twice in a hung jury. After his third trial, however, the jury found him guilty as charged. The trial court imposed aggravated consecutive terms of imprisonment: twenty-one years for the armed robbery conviction, and seven years for the theft of means conviction.

*State v. Martinez,* No. 1 CA-CR 08-0924, 2010 WL 3366407, at *1 (Ariz. Ct. App. Aug. 26, 2010).

### b.  Direct Appeal

On January 4, 2010, Petitioner filed a timely direct appeal, which raised the following issues:

1. Whether the trial court erred when it denied Petitioner's *Batson* challenge.

2. Whether the court abused its discretion in permitting the State to introduce evidence of a high-five and communication with codefendant.

3. Whether the imposition of consecutive sentences was

---

[1] The Arizona Court of Appeals' recitation of the facts is presumed correct. *See* 28 U.S.C. § 2254(d)(2), (e)(1); *Runningeagle v. Ryan,* 686 F.3d 758, 763 n.1 (9th Cir. 2012) (rejecting argument that statement of facts in state appellate court's opinion should not be afforded the presumption of correctness).

error.

4. Whether Petitioner's sentences for both charges violated the probation against double punishment for the same offense.

5. Whether officers had reasonable suspicion to detain Petitioner.

6. Whether the victim's in-court identification was unduly suggestive.

(Doc. 19-2, Ex. M, at 1.)

On April 26, 2010, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences. *Martinez*, 2010 WL 3366407, at *1. On September 16, 2010, Petitioner filed a Petition for Review with the Arizona Supreme Court. (Doc. 19-2, Ex. Q, at 171.) The Arizona Supreme Court summarily denied review. (Doc. 19-3, Ex. R, at 2.)

### c. Petition for State Post-Conviction Relief

On October 1, 2010, Petitioner timely filed a Notice of Post-conviction Relief. (Doc. 19-3, Ex. S, at 4.) Appointed counsel filed a notice stating she was "unable to find any claims for relief to raise in post-conviction proceedings." (Doc. 19-3, Ex. V, at 13.) On May 4, 2011, Petitioner filed a *pro se* PCR Petition. (Doc. 19-3, Ex. X, at 19.) On May 19, 2011, the trial court struck Petitioner's PCR Petition and ordered Petitioner to file a Petition that complied with Rule 32.5 of the Arizona Rules of Criminal Procedure. (Doc. 19-3, Ex. BB, at 55.) On November 22, 2011, Petitioner filed a revised petition, which raised the following arguments:

1. A violation of due process based upon false testimony and an inaccurate presentence report.

2. A disparity of sentences between codefendants based upon an appearance of vindictiveness for exercising the right to proceed to trial.

3. Newly-discovered evidence related to $8.95 warranted a new trial.

4. Prosecutorial misconduct based upon testimony related to DNA testing and $8.95.

5. A violation of the presumption of innocence when the victim referred to a prior trial and a witness testified to a "high five" between codefendants.

1

2

   6. Ineffective assistance of counsel based upon the arguments listed above.

3

4

5

6

7

(Doc. 19-3, Ex. II, at 79.) On March 9, 2012, the trial court denied Petitioner's PCR Petition, ruling that Petitioner "did not show a colorable claim for which post-conviction relief is warranted. Therefore, IT IS ORDERED denying Defendant's request for Post-Conviction Relief pursuant to Rule 32, Arizona Rules of criminal procedure." (Doc. 19-3, Ex. QQ, at 146.)

8

   **d.  PCR Appeal**

9

10

11

12

   On May 23, 2012, Petitioner filed a Petition for Review with exhibits. (Doc. 19-3, Exs. VV & WW, at 159, 180.) On August 8, 2013, the Arizona Court of Appeals summarily denied review of Petitioner's Petition for Review. (Doc. 19-3, Ex. XX, at 194.)

13

**III. PETITIONER'S HABEAS PETITION**

14

15

16

17

18

19

   On October 8, 2014, Petitioner filed the instant, timely habeas Petition.[2] Petitioner submits 12 grounds in the Petition. The writ of habeas corpus affords relief to persons in custody pursuant to the judgment of a state court in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. §§ 2241(c)(3), 2254(a).  Petitions for Habeas Corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  28 U.S.C. § 2244.

20

   **a.  Standard of Review – Procedural Default**

21

22

23

24

25

26

   Ordinarily, a federal court may not grant a petition for writ of habeas corpus unless a petitioner has exhausted available state remedies. 28 U.S.C. § 2254(b). To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by "fairly presenting" them to the state's "highest" court in a procedurally appropriate manner. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly

27

28

   [2] On August 5, 2014, Petitioner filed a Petition (Doc. 1.), but it was dismissed without prejudice on September 23, 2014 (Doc. 6) with leave to amend within 30 days. The current Amended Petition (Doc. 7) contains the same grounds as the initial Petition.

present' his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim").

A claim has been fairly presented if the petitioner has described both the operative facts and the federal legal theory on which his claim is based. *See Baldwin*, 541 U.S. at 33. A "state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or brief . . . that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Id.* at 31–32. Thus, "a petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum . . . (2) through the proper vehicle, . . . and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations omitted).

The requirement that a petitioner exhaust available state court remedies promotes comity by ensuring that the state courts have the first opportunity to address alleged violations of a state prisoner's federal rights. *See Duncan v. Walker*, 533 U.S. 167, 178 (2001); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Principles of comity also require federal courts to respect state procedural bars to review of a habeas petitioner's claims. *See Coleman*, 501 at 731-32. Pursuant to these principles, a habeas petitioner's claims may be precluded from federal review in two situations.

First, a claim may be procedurally defaulted and barred from federal habeas corpus review when a petitioner failed to present his federal claims to the state court, but returning to state court would be "futile" because the state court's procedural rules, such as waiver or preclusion, would bar consideration of the previously unraised claims. *See Teague v. Lane*, 489 U.S. 288, 297–99 (1989); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002). If no state remedies are currently available, a claim is technically exhausted, but procedurally defaulted. *Coleman*, 501 U.S. at 735 n.1.

Second, a claim may be procedurally barred when a petitioner raised a claim in state court, but the state court found the claim barred on state procedural grounds. *See*

*Beard v. Kindler*, 558 U.S. 53, 59 (2009). "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claim has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 731–32. In this situation, federal habeas corpus review is precluded if the state court opinion relies "on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989).

A procedurally defaulted claim may not be barred from federal review, however, "if the petitioner can demonstrate either (1) 'cause for the default and actual prejudice as a result of the alleged violation of federal law,' or (2) 'that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Jones*, 691 F.3d at 1101 (quoting *Coleman*, 501 U.S. at 732. *See also Boyd v. Thompson*, 147 F.3d 1124, 1126-27 (9th Cir. 1998) (the cause and prejudice standard applies to *pro se* petitioners as well as to those represented by counsel). To establish "cause," a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Cook*, 538 F.3d at 1027 (quoting *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)). "Prejudice" is actual harm resulting from the constitutional violation or error. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984). To establish prejudice, a petitioner must show that the alleged error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1996). Where a petitioner fails to establish either cause or prejudice, the court need not reach the other requirement. *See Hiivala v. Wood*, 195 F.3d 1098, 1105 n.6 (9th Cir. 1999); *Cook v. Schriro*, 538 F.3d 1000, 1028 n.13 (9th Cir. 2008).

Lastly, "[t]o qualify for the 'fundamental miscarriage of justice' exception to the procedural default rule" a petitioner "must show that a constitutional violation has 'probably resulted' in the conviction when he was 'actually innocent' of the offense." *Cook*, 538 F.3d at 1028 (quoting *Murray*, 477 U.S. at 496). *See Schlup v. Delo*, 513 U.S.

298, 329 (1995) (petitioner must make a credible showing of "actual innocence" by "persuad[ing] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eye-witness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324.

### b. *Martinez v. Ryan*

A Petitioner may assert that the ineffectiveness of his appellate and PCR counsel constitutes cause and prejudice to excuse the presentation of his procedurally defaulted claims. *See Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012).

The Courts have long rejected claims of ineffective assistance of PCR counsel. "There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Coleman*, 501 U.S. at 752. The *Coleman* Court thus held that the ineffectiveness of PCR counsel also could not establish cause to excuse a failure to properly exhaust state remedies and procedural default on a claim.  (*Id.*)

However, the Supreme Court has since recognized an exception to the *Coleman* rule.  In *Martinez*, the Court recognized that because courts increasingly reserve review of claims of ineffective assistance of trial counsel to PCR proceedings, the ineffectiveness of counsel in such PCR proceedings could effectively defeat any review of trial counsel's ineffectiveness. Accordingly, the Court recognized a narrow exception to *Coleman's* ruling on the ineffectiveness of PCR counsel as cause to excuse a procedural default on such a claim.  *Martinez*, 132 S. Ct. at 1315.

Under *Martinez*, a petitioner may establish cause for the procedural default of an ineffective assistance claim by establishing the following: (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review

proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law *requires* that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding." *Trevino v. Thaler*, 133 S. Ct. 1911, 1918 (2013) (quoting *Martinez*, 132 S. Ct. at 1318).    With regard to the first prong, Petitioner must "demonstrate that the underlying ineffective assistance of trial counsel claim is a substantial one, which is to say that . . . the claim has some merit."  *Martinez*, 132 S. Ct. at 1318-19.  In *Nguyen v. Curry*, the Ninth Circuit held that *Martinez* applied equally to claims of ineffective assistance of appellate counsel that were not presented. 736 F.3d 1287, 1289 (2013).

To determine whether Petitioner's ineffective assistance of trial and appellate counsel claims are "substantial," and whether PCR counsel was ineffective for failing to raise them, the Court must determine whether PCR counsel's conduct fell below an objective standard of reasonableness and whether petitioner was prejudiced, as outlined in *Strickland v. Washington*, 466 U.S. 668 (1984).

### c.  Standard of Review - Merits

The Court may not grant a writ of habeas corpus to a state prisoner on a claim adjudicated on the merits in state court proceedings unless the state court reached a decision which was contrary to clearly established federal law, or the state court decision was an unreasonable application of clearly established federal law.  *See* 28 U.S.C. § 2254(d); *Davis v. Ayala*, 135 S.Ct. 2187, 2198-99 (2015); *Musladin v. Lamarque*, 555 F.3d 834, 838 (9th Cir. 2009).  The AEDPA requires that the habeas court review the "last reasoned decision" from the state court, "which means that when the final state court decision contains no reasoning, we may look to the last decision from the state court that provides a reasoned explanation of the issue."  *Murray v. Schriro*, 746 F.3d 418, 441 (9th Cir. 2014) (quoting *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000)).

> Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this

Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. Rather, as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.

*White v. Woodall*, 134 S.Ct. 1697, 1702 (2014) (internal citations and quotations omitted). *See also Arrendondo v. Neven*, 763 F.3d 1122, 1133-34 (9th Cir. 2014).

Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fair minded disagreement." Harrington v. Richter, [] 131 S.Ct. 770, 786–787, [] (2011). "If this standard is difficult to meet"—and it is—"that is because it was meant to be." [] 131 S.Ct., at 786. We will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. Id., at ——, 131 S.Ct., at 786 (internal quotation marks omitted).

*Burt v. Titlow*, 134 S.Ct. 10, 15-16 (2013).

A state court decision is contrary to federal law if it applied a rule contradicting the governing law as stated in United States Supreme Court opinions, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. *Brown v. Payton*, 544 U.S. 133, 141 (2005).

A state court decision involves an unreasonable application of clearly established federal law if it correctly identifies a governing rule but applies it to a new set of facts in a way that is objectively unreasonable, or if it extends, or fails to extend, a clearly established legal principle to a new set of facts in a way that is objectively unreasonable. *See McNeal v. Adams*, 623 F.3d 1283, 1287–88 (9th Cir. 2010). The state court's determination of a habeas claim may be set aside under the unreasonable application prong if, under clearly established federal law, the state court was "unreasonable in

refusing to extend [a] governing legal principle to a context in which the principle should have controlled." *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000). However, the state court's decision is an unreasonable application of clearly established federal law only if it can be considered objectively unreasonable. *See, e.g.*, *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010). An unreasonable application of law is different from an incorrect one. *See Renico*, 130 S. Ct. at 1862; *Cooks v. Newland*, 395 F.3d 1077, 1080 (9th Cir. 2005). "That test is an objective one and does not permit a court to grant relief simply because the state court might have incorrectly applied federal law to the facts of a certain case." *Adamson v. Cathel*, 633 F.3d 248, 255–56 (3d Cir. 2011). *See also Howard v. Clark*, 608 F.3d 563, 567–68 (9th Cir. 2010).

Factual findings of a state court are presumed to be correct and can be reversed by a federal habeas court only when the federal court is presented with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Brumfield v. Cain*, 135 S.Ct. 2269, 2277 (2015). The "presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact." *Sumner v. Mata*, 455 U.S. 591, 593 (1982). *See also Phillips v. Ornoski*, 673 F.3d 1168, 1202 n.13 (9th Cir. 2012).

Additionally, the United States Supreme Court has held that, with regard to claims adjudicated on the merits in the state courts, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). *See also Murray*, 745 F.3d at 998. Pursuant to section 2254(d)(2), the "unreasonable determination" clause, "a state-court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Burt*, 134 S.Ct. at 15 (internal quotation marks and citation omitted) (quoted by *Clark v. Arnold*, 769 F.3d 711, 724-25 (9th Cir. 2014)).

If the Court determines that the state court's decision was an objectively unreasonable application of clearly established United States Supreme Court precedent, the Court must review whether Petitioner's constitutional rights were violated, i.e., the

1    state's ultimate denial of relief, without the deference to the state court's decision that the

2    AEDPA otherwise requires.  *See Lafler*, 132 S. Ct. 1389-90; *Panetti v. Quarterman*, 551

3    U.S. 930, 953–54 (2007). Additionally, the petitioner must show the error was not

4    harmless: "For reasons of finality, comity, and federalism, habeas petitioners are not

5    entitled to habeas relief based on trial error unless they can establish that it resulted in

6    'actual prejudice.'" *Davis v. Ayala*, 135 S.Ct. 2187, 2197 (2015) (internal quotations

7    omitted).

8                    **d.  Ground One**

9            Petitioner asserts "the trial court abused its discretion by allowing the state to

10   present evidence of Petitioner and co-defendant [communicating] while in court" on a

11   prior occasion. (Doc. 7 at 6.) In Petitioner's direct appeal, he argued that a deputies'

12   testimony (that Petitioner and a codefendant exchanged a high five during a court

13   appearance) violated Rule 404(b) of the Arizona Rules of Evidence. (Doc. 19-2, Ex. M,

14   at 28.) Petitioner did not cite to federal law or assert a federal claim. Because he did not

15   fairly present a federal claim, Petitioner must establish cause and prejudice to excuse the

16   default.

17           In his Reply, Petitioner states he "can satisfy the 'cause' requirements by showing

18   that assistance of counsel was ineffective . . . ." (Doc. 24 at 5.) He asserts that "appellate

19   counsel failed to cite any federal violation or case law that will protect the Petitioner from

20   any additional harm if he [chose] to file for habeas corpus." (*Id.*)[3] Because Petitioner's

21   claim is not substantial, he cannot establish cause to excuse this default.

22           The Arizona Court of Appeals denied the same claim in Petitioner's direct appeal,

23   finding as follows:

24                   Before trial, Defendant moved in limine to preclude a sheriff
25                   deputy's testimony regarding his observation of a "high-five"
                     and other communication between Defendant and Perez while
26                   they were previously in court on June 5, 2008 waiting for a

27   ─────────────────────

28         [3] The Court assumes, without deciding, that *Martinez* applies to this claim. If true,
     this argument would add *Martinez* review to any claim not fairly presented in state court
     merely by stating counsel should have raised a federal claim.

1   pretrial hearing to commence…. The trial court found the
2   anticipated testimony to be relevant but prohibited the State
    from eliciting evidence that Defendant and Perez were in
3   custody at the time of the perceived high-five…. Here,
    evidence of Defendant and Perez exchanging a high-five after
4   the robbery incident tends to prove that they knew each other
    and were accomplices in committing the charged offenses.
5   The deputy's testimony was therefore relevant. *See State v.*
    *Beard*, 107 Ariz. 388, 391, 489 P.2d 25, 28 (1971)
6   ("companionship [ ] and conduct before and after the offense
    are circumstances from which one's participation in the
7   criminal intent may be inferred.") (internal quotation
    omitted). Other explanations for the high-five may affect the
8   weight to be afforded the evidence, but they have no bearing
    on its admissibility…. For these reasons, the trial court did
9   not abuse its discretion in admitting evidence of the high-five
    between Defendant and Perez.

10   *Martinez*, 2010 WL 3366407, at *3.

11       One of Petitioner's arguments at trial was misidentification. At the beginning of

12   Petitioner's closing argument, counsel argued that ". . . Mr. Martinez was in the wrong

13   place at the wrong time, leading to a misidentification." (Doc. 19-7, Ex. PPP, at 71.)

14   Evidence tending to establish the codefendants knew each other would be relevant. *See*

15   *United States v. Souffront*, 338 F.3d 809, 825 (7th Cir. 2003) (affirming admission of

16   photographs, one of which "shows that there is some type of relationship between"

17   codefendants). During argument to the court regarding a motion in limine, counsel's

18   primary concern was that the jury would discover that Petitioner was in custody.

19       THE COURT: Your main issue and concern is that in order to
20   bring up this issue and have these officers testify, is that you
    have to go into the fact that they've been held in custody?

21       COUNSEL: Yes, Your Honor.

22   (Doc. 19-5, Ex. LLL, at 5.)

23       Here, the trial court ameliorated Petitioner's primary concern and prohibited any

24   reference to Petitioner's custody status. Petitioner fails to establish that error, if any, had

25   a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*

26   *v. Abrahamson*, 507 U.S. 619, 623 (1993). Petitioner cannot demonstrate cause, let alone

27   prejudice, for his default. Accordingly, habeas relief is precluded as to Ground One.

28

### e.  Ground Two

In Ground Two, Petitioner asserts four subclaims alleging ineffective assistance of counsel. Petitioner also asserts that if these grounds are procedurally defaulted, then ineffective assistance of counsel should excuse the default. (Doc. 24 at 17-18.) The Court begins with the merits of this argument in the interest of judicial economy. *See Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (explaining that the court may bypass the procedural default issue in the interest of judicial economy when the merits are clear but the procedural default issues are not); *Jones v. Davis*, 806 F.3d 538, 543 (9th Cir. 2015) ("we ordinarily consider exhaustion first, but we have discretion in some circumstances to deny a claim on the ground that it is barred by *Teague*, without considering exhaustion").

The Supreme Court established a two-part test for evaluating ineffective assistance of counsel claims in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984).  In order to prevail on an ineffective assistance claim, a convicted defendant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See id*. at 687-88.

Regarding the performance prong, a reviewing court engages a strong presumption that counsel rendered adequate assistance, and exercised reasonable professional judgment in making decisions. *See id*. at 690. "[A] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Bonin v. Calderon*, 59 F.3d 815, 833 (9th Cir. 1995) (quoting *Strickland*, 466 U.S. at 689). Moreover, review of counsel's performance is "extremely limited." *Coleman v. Calderon*, 150 F.3d 1105, 1113 (9th Cir. 1998), rev'd on other grounds, 525 U.S. 141 (1998). Acts or omissions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel. *Strickland*, 466 U.S. at 689. Thus, a court "must judge the reasonableness of

counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689.

In addition to showing counsel's deficient performance, a petitioner must establish that he suffered prejudice as a result of that deficient performance. *See id*. at 691-92. To establish prejudice, a prisoner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice component "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). It is not enough to merely show "that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. A habeas court may proceed directly to the prejudice prong without deciding whether counsel's performance was deficient. *Id*. at 697; *Jackson v. Calderon*, 211 F.3d 1148, 1155 n. 3 (9th Cir. 2000) (citing *Strickland*).

### i.  Failure to Examine Clothing for DNA Evidence

Petitioner asserts counsel was ineffective for failing "to preserve and have DNA expert examine clothing . . . ." (Doc. 7 at 7.)  Petitioner asserts the "outcome of the trial would have been different" if DNA testing of the clothing was conducted. (Doc. 24 at 15.) Petitioner presents no evidence to establish this claim is true.  Here, DNA testing had been conducted on the vehicle where the offense occurred, but the results were inconclusive. The detective swabbed "six areas" of the taxi for DNA evidence. (Doc. 19-6, Ex. OOO, at 191.) The DNA analyst testified that the "comparison of all the swabs from the taxicab to the two standards I had were inconclusive." (Doc. 19-6, Ex. OOO, at 215.) There's no evidence to establish that DNA testing, if conclusive, would have been more or less likely to inculpate or exculpate the Petitioner. Petitioner's speculation regarding the potential results of further DNA testing is insufficient to establish

prejudice. *See Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997) ("Speculation about what an expert could have said is not enough to establish prejudice."); *Jackson v. Calderon*, 211 F.3d 1148, 1155 (9th Cir. 2000) (unsupported speculation and conclusory allegations of ineffective assistance of counsel are insufficient to establish ineffective assistance); *McBride v. Sharpe*, 25 F.3d 962, 972 (11th Cir. 1994) (finding "no merit" that counsel was ineffective for failing to submit evidence for forensic testing where petitioner "offers no evidence to establish that a forensic examination of the pubic hairs would have shown that he was not involved"). Petitioner's claim fails.

### ii.  Failure to Object to Reference of a Prior Trial

Petitioner asserts counsel was ineffective for failing to request a mistrial when a witness referred to a prior trial. (Doc. 24 at 15.)  During the trial, Petitioner's counsel asked the victim on cross-examination, "[Have] you seen these pants before?" and the victim responded, "Yes." (Doc. 19-5, Ex. MMM, at 210.) Petitioner's counsel then asked, "Where?"  and the victim responded, "Mr. Martinez was holding them up in front of him in the last trial." (*Id.*) Petitioner asserts this affected his "presumption of innocence." (Doc. 7 at 7.)

Petitioner's claim fails because he cannot establish there was prejudice. The trial court instructed the jury at the end of the trial regarding the presumption of innocence. The standard instruction stated: "The law does not require a defendant to prove innocence. Every defendant is presumed by law to be innocent. You must start with the presumption that the defendant is innocent."  (Doc. 19-2, Ex. G, at 34.) A jury is presumed to follow its instructions. *Penry v. Johnson*, 532 U.S. 782, 799 (2001). Although counsel did not request a mistrial, the decision whether to grant a mistrial is reserved to the broad discretion of the trial judge. *Illinois v. Somerville*, 410 U.S. 458, 461–63 (1973). Here, the jury was not informed there was a prior hung jury, but only that there was a prior trial.  Because the jury was not informed of a prior hung jury, Petitioner cannot establish his trial was unfair. *See Reiger v. Christensen*, 789 F.2d 1425, 1430 (9th Cir. 1986) (finding on habeas review that the "dispositive issue is … whether the trial

court committed an error which rendered the trial "so 'arbitrary and fundamentally unfair' that it violated federal due process) (citation omitted); *Jones v. Gomez*, 66 F.3d 199, 204–205 (9th Cir. 1995) (conclusory allegations of ineffective assistance of counsel are not sufficient to support habeas relief). Petitioner cannot demonstrate any due process violation as a result of counsel's failure to request a mistrial, which would almost certainly have been denied based upon a sole reference to a prior trial.

### iii.  Improper Comments During Closing Argument

Petitioner asserts counsel was ineffective for failing to object to the "prosecution's improper comments that some of the loci do match that of the defendant." (Doc. 24 at 16.)  During closing argument, the prosecutor stated:

> Ultimately, the DNA from that taxicab was inconclusive. I did want to mention one thing. On the Power Point that Mr. Winchell showed you, he said not one of those loci matched up. That's inaccurate, and you'll have the exhibits back there that you can look at. Some of the exhibits from the cab do match up with the Defendant, but the criminalist told you there's not enough there for him to come to a scientific conclusion. That was the testimony, and that's the evidence, and when you look at those boards you'll see that it's not true that nothing lined up.

(Doc. 19-7, Ex. PPP, at 103.)

The prosecutor's argument that the jurors should review the exhibits to confirm that some "loci do match up with the Defendant" was not improper. By examining the exhibits, the jurors could easily determine for themselves whether "not one of these loci matched up." (*Id.*) This comment was a response to an argument of the Petitioner,[4] and counsel reminded the jurors that the results were inconclusive.  Counsel was not ineffective for failing to object to this statement. *See Fields v. Woodford*, 309 F.3d 1095, 1108–09 (9th Cir. 2002) (finding on federal habeas review that the "relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the

---

[4] "Thus the import of the evaluation has been that if the prosecutor's remarks were 'invited,' and did no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction." *United States v. Young*, 470 U.S. 1, 12–13 (1985).

resulting conviction a denial of due process.") (internal citations and quotations omitted). "[T]he failure to take a futile action can never be deficient performance." *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996).

### iv.  Failure to Interview Witnesses

Petitioner asserts "trial counsel's failure to investigate and interview any potential witness" violated his "Sixth Amendment right to effective assistance of counsel." (Doc. 24 at 16.) Petitioner admits "there's no telling what these witness[es] might say" but they could have relevant information about "what the suspects were wearing, . . . what race they were," and who was running from the scene. (Doc. 24 at 16.) Petitioner's claim fails because he cannot establish deficient performance by the failure to identify and interview additional witnesses. *See Dows v. Wood*, 211 F.3d 480, 486–87 (9th Cir.), cert. denied, 531 U.S. 908 (2000) (determining that counsel's failure to interview an alleged alibi witness did not constitute ineffective assistance because there was "no evidence that this witness would have provided helpful testimony—i.e., Dows has not presented an affidavit from this alleged witness"); *Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001) (mere speculation that a witness might have provided helpful information if interviewed is not enough to support an ineffective assistance of counsel claim).

### v.  Ineffective Assistance of Appellate and PCR Counsel

Petitioner asserts that appellate and PCR counsel were ineffective for failing to raise the arguments he presents in the Petition. (Doc. 7 at 7.) This Court concludes the arguments are meritless, thus appellate and post-conviction counsel were not ineffective for failing to raise them.

### f.  Ground Three

Petitioner asserts the prosecutor committed misconduct by "knowingly presenting false testimony" and contradicting the State's DNA expert. (Doc. 1 at 13.) Regarding the false testimony claim, Petitioner claims that the prosecutor knowingly elicited (1) false testimony from Officer Gutierrez that Petitioner lived in South Phoenix (Doc. 24 at 20), and (2) false testimony from Detective Ybarra that Petitioner did not "have any money at

1   the time of his arrest" (*Id.* at 23).  The trial court reviewed this argument in Petitioner's

2   PCR Petition,[5] and found Petitioner "did not show a colorable claim for which Post-

3   Conviction Relief is warranted." (Doc. 19-3, Ex. QQ, at 146.)[6]

4       A conviction obtained based on the knowing use of false evidence violates an

5   individual's Fourteenth Amendment rights. *Napue v. Illinois*, 360 U.S. 264, 269–71

6   (1950). But contradictory or inconsistent testimony is insufficient to warrant a reversal,

7   instead the prosecutor must have knowingly presented false evidence. *United States v.*

8   *Sherlock*, 962 F.2d 1349, 1364 (9th Cir. 1992). Reversal is even more difficult to obtain

9   in habeas proceedings: a petitioner may only obtain habeas relief if the error had

10  "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*,

11  507 U.S. at  637.

12              **i.  Petitioner's Residence**

13      Here, Petitioner asserts he did not live in South Phoenix, but instead resided in

14  "Maryvale." (Doc. 24 at 21.) The prosecutor asked Officer Gutierrez "And do you

15  remember what the -- which area of town he lived in, according to his ID card?" (Doc.

16  19-6 at 93-94.) The officer responded "He -- the ID card said that he lived in South –

17  South Phoenix area." (*Id.*)    During cross-examination, Petitioner's counsel asked

18  "Officer, isn't it true that the information you gathered from his ID card said that he

19  resided at 3001 North Forty-Eighth Drive, Phoenix, Arizona?" (Doc. 19-6, Ex. OOO, at

20  102.) Counsel then had Officer Gutierrez agree that the address was "north" of South

21  Phoenix. (*Id.* at 103.) This information presented from Officer Gutierrez was, at most,

22  contradictory. Moreover, Petitioner does not dispute the jurors knew Petitioner's actual

23  address, nor does he dispute that the officer agreed the address was north of "South

24

_____

25      [5] *See* Doc. 19-3, Ex. II, at 91, 88, where Petitioner argued:  "the testimony elicited
    from Officer Gutierrez that Mr. Martinez lived in South Phoenix was false" and ". . . it
26  was Mr Martinez who had the $8.95 and not Mr. Perez."

27      [6] The trial court did not refer to a procedural bar in its PCR ruling, which pertains
    to Grounds 3, 9-12.  The court instead found the claims were "not colorable." (Doc. 19-3,
28  Ex. QQ, at 146.) The Court reviews these Grounds on their merits. *See Harris v. Reed*,
    489 U.S. 255, 260 (1989).

Phoenix." The jury was capable of determining whether that location could be described as "South Phoenix." Petitioner cannot establish the information, in light of cross-examination, had an injurious effect on the jury. Petitioner's claim is insufficient to warrant habeas relief.

### ii.  Possession of $8.95

Petitioner's claim that the prosecution falsely introduced evidence regarding the possession of $8.95 at the time of arrest is similarly insufficient. Petitioner's argument is that Detective Ybarra testified Petitioner had no cash on his person at the time of arrest. Contrary to Detective Ybarra's testimony, Petitioner asserts he did have $8.95. Petitioner presents jail documents to establish Petitioner possessed the $8.95.[7]  Petitioner asserts that if he had this cash, then it corroborates his statement that he intended to take a bus ride prior to his arrest. (Doc. 24 at 26.) Because Detective Ybarra testified that Petitioner had no cash, this testimony impeached Petitioner's statement that he intended to take a bus ride.

The prosecutor asked Detective Ybarra the following questions:

Q How much money did Rafael Martinez have on his person?

A. I'm sorry, none.

Q Detective, could I direct your attention to the bottom of that page that you're looking at there on Exhibit 41?

A. Yes, it says $8.95.

Q. And is that an amount that he had on his person?

A. I don't believe it was his.

…

Q. Let me follow up. Is this an arrest for both Rafael Martinez and Nicholas Perez?

A. Yes.

---

[7] Petitioner is correct that the booking records do indicate he had $8.95 when he was accepted at the county jail on July 26, 2007. (Doc. 24-1, Ex. B, at 23; Doc. 24-1, Ex. E, at 34.) But as noted above, Detective Ybarra also agreed the records stated this fact.

1                 Q. And how much money did Nicholas Perez have on

2 his person?

3                 A. $8.95.

(Doc. 19-7, Ex. PPP, at 35.)

      Petitioner has not established that Detective's testimony was false. Detective

Ybarra agreed that the booking form stated $8.95 was listed on Petitioner's "arrest

record." (*Id.*) But the witness also stated she did not believe the $8.95 was Petitioner's,

and instead testified that $8.95 was the amount on Perez's person. (*Id.*)  In fact, it was the

prosecutor who brought document disparity to the jury's attention. In response, the

witness stated that she did not believe the money was Petitioner's even though the

document said otherwise.  At most, Detective Ybarra's knowledge regarding the cash

compared to the entry listed on the booking record reflects an inconsistency. Petitioner

has not established the testimony was false. Petitioner has also failed to establish that this

testimony "had a substantial and injurious effect" on the jury's determination.

### iii.  Contradicting the DNA Witness

      Petitioner asserts the prosecutor contradicted the DNA expert when the prosecutor

argued "some of the exhibits from the lab do match up with the defendant." (Doc. 24 at

29.) This is the same argument presented, and rejected, in Ground Two above.[8]

### g.  Ground Four

      Petitioner asserts the State violated his Fifth Amendment guarantee against double

jeopardy when it convicted him of Armed Robbery and the "lesser-included offense" of

Theft of Means of Transportation. (Doc. 24 at 32.) The Arizona Court of Appeals

rejected Petitioner's argument, finding:

> Here, the crimes of armed robbery and theft of means
> of transportation each contain at least one element not found
> in the other. *See* A.R.S. §§ 13-1902,-1904 (armed robbery
> requires a defendant to threaten to use force via a deadly
> weapon to take property from another); A.R.S. § 13-
> 1814(A)(5) (theft of means of transportation requires a
> defendant to knowingly control, without lawful authority,

---

[8] Petitioner incorrectly numbered pages 30 and 31 of his Reply. Page 31 should precede page 30.

another's use of means of transportation knowing that the property was stolen). Thus, contrary to Defendant's assertion, theft of means is not a lesser-included offense of armed robbery under the facts of this case. No double jeopardy violation occurred.

*Martinez*, 2010 WL 3366407, at *8.

Petitioner's claim is not cognizable and fails on the merits. Petitioner alleges he submitted this claim to the Arizona Court of Appeals (Doc. 7 at 9, 13), but that claim was based upon a violation of A.R.S. § 13–116.[9] To the extent Petitioner argues the sentence violated Arizona law, that argument is not cognizable on habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("Federal habeas relief does not lie for errors of state law."); *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) ("The decision whether to impose sentences concurrently or consecutively is a matter of state criminal procedure and is not within the purview of federal habeas corpus."). Petitioner's federal claim is procedurally defaulted because it was not raised as a federal claim in state court. In the Arizona Court of Appeals, Petitioner cited Arizona law and argued that the "Arizona Supreme Court has held that A.R.S. § 13–116 precludes the court from imposing consecutive sentences if the defendant's conduct is considered a 'single act.'" (Doc. 19-2, Ex. M, at 31.) Petitioner asserts no cause to excuse the procedural default.

The claim that Petitioner's convictions violated his right against double jeopardy is also meritless. The test that determines whether two convictions violate the Double Jeopardy Clause is "whether there are two offenses or only one," which is established by evaluating "whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932) (citations omitted). The Arizona Court of Appeals determined the facts of this case support a finding that no double

---

[9] Ariz. Rev. Stat. Ann. § 13-116: "An act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent."

jeopardy violation occurred. Respondent argues that the theft of cash from the victim was separate from the theft of the vehicle. (Doc. 19 at 41.) This argument is supported by the State's closing argument, where the prosecutor stated:

> Just to briefly go over the armed robbery count, there are five separate and distinct elements to that count, and those are described on page 7 of your jury instructions, and it tells you that the State must prove these five things.
>
> One, that the Defendant or an accomplice took the property of another.
>
> Well, in this case we know that Nicholas Perez took Deane Maki 's money, and the Defendant took his cab.

(Doc. 19-7, Ex. PPP, at 59.)

Petitioner does not dispute that money and a vehicle were stolen. Additionally, the State was permitted to charge two separate crimes. "A state may punish separate offenses arising out of the same transaction without violating the double jeopardy clause." *Walker v. Endell*, 850 F.2d 470, 476 (9th Cir. 1987) (*citing Albernaz v. United States*, 450 U.S. 333 (1981)).  *See also, Rhoden v. Rowland*. 10 F.3d 1457, 1462 (9th Cir. 1993) (it is "well settled that a single transaction can give rise to distinctive offenses under separate statutes without violating the Double Jeopardy Clause"). Petitioner has failed to establish that the court's determination was contrary to, or involved an unreasonable application of, clearly established Federal law as set forth by the United States Supreme Court.

### h.  Ground Five

Petitioner argues the trial court erred "by not applying a clear and convincing standard" to determine if Petitioner's pretrial identification was unduly prejudicial. (Doc. 24 at 38.) The Arizona Court of Appeals found:

> To obtain relief under fundamental error review, Defendant has the burden to show that error occurred, the error was fundamental, and that he was prejudiced thereby. *State v. Henderson*, 210 Ariz. 561, 567-68, ¶¶ 20-22, 115 P.3d 601, 607-08 (2005). Without deciding whether the court fundamentally erred by applying an incorrect standard, *see Dessureault*, 104 Ariz. at 384, 454 P.2d at 985, we conclude Defendant cannot sustain his burden of establishing the requisite prejudice.

Defendant claims he was prejudiced because "[u]ndoubtedly, [Defendant] would not have been convicted if the court had determined that the State has not proven by clear and convincing evidence that [D.M.]'s in-court identification of [Defendant] was reliable." This argument, however, speculates that, had the trial court applied the heightened standard, it would have found no clear-and-convincing evidence of the identification procedure's reliability. We will not presume prejudice when none appears affirmatively in the record. *See State v. Trostle*, 191 Ariz. 4, 13-14, 951 P.2d 869, 878-79 (1997); *State v. Munninger*, 213 Ariz. 393, 397, ¶ 14, 142 P.3d 701, 705 (App. 2006); *see also Henderson*, 210 Ariz. at 567, ¶ 19, 115 P.3d at 607 (noting burden of persuasion placed on the defendant in a fundamental error review to discourage him from taking his chances on a favorable verdict, "reserving the 'hole card' of a later appeal" on a matter that was wholly curable at trial, and then seeking reversal on appeal) (quotation omitted). Defendant's speculation is therefore insufficient to warrant reversal under fundamental error review.

*Martinez*, 2010 WL 3366407, at *6.

A pretrial identification violates due process where (1) the police-arranged identification procedure is impermissibly suggestive, and (2) the suggestive procedure gives rise to a very substantial likelihood of misidentification. *Neil v. Biggers*, 409 U.S. 188, 197 (1972). "If we find that a challenged procedure is not impermissibly suggestive, our inquiry into the due process claim ends." *United States v. Bagley*, 772 F.2d 482, 492 (9th Cir.1985). It is only after finding it unduly suggestive, that the court is required to consider the *Biggers* factors. *Id*. The factors to be considered in assessing reliability are: (1) the witness's opportunity to view the accused at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the description, (4) the witness's level of certainty, and (5) the length of time between the crime and the confrontation. *Biggers*, 409 U.S. at 199–200.

In his Petition, Petitioner states (without argument) that "the in court identification of Petitioner was unduly subjective . . . ." (Doc. 7 at 10.) In his Reply, Petitioner extensively argues each of the five factors of *Biggers*. (Doc. 24 at 33-38.) The Ninth Circuit "has found that show-ups are not objectionable unless the procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable

1   misidentification." *United States v. Kessler*, 692 F.2d 584, 585 (9th Cir. 1982) (internal

2   citations and quotations omitted).

3       The Arizona Court of Appeals found no prejudice appeared affirmatively in the

4   record, noting that:

5           D.M. testified at trial that he clearly observed Defendant
            before and during the robbery, and that he performed the
6           show-up of Defendant less than one hour after the incident,
            during which he recognized Defendant "right away." D.M.
7           had "no doubt" at trial that Defendant was "the man."

8   *Martinez*, 2010 WL 3366407, at *6, n.16. The court also noted that the trial court

9   "specifically found that (1) D.M. had sufficient opportunities to view Defendant as

10  Defendant approached and entered the taxi; (2) D.M. had a high degree of confidence that

11  Defendant was the person 'at the scene'; and (3) the show-up occurred soon after the

12  robbery. The record supports these findings." *Id.*, at *6, n.15.

13      The Arizona state court's fact finding was not unreasonable. After assessing the

14  totality of the circumstances, D.M.'s pretrial identification was reliable and the show-up

15  conducted was not so impermissibly suggestive as to give rise to a very substantial

16  likelihood of irreparable misidentification.

17      Regarding the first factor (the witness's opportunity to view the accused at the

18  time of the crime), the victim testified that he got "a very good look" at Petitioner (Doc.

19  19-4, Ex. EEE, a 85), the victim looked at Petitioner's face from one to two feet away

20  when the door was opened (*Id.* at 78), he was "inches" from the Petitioner at one point

21  during the robbery (*Id.* at 83), and he saw Petitioner again when the Petitioner moved

22  from the back seat into the front seat of the taxi (*Id.*).

23      For the second factor (the witness's degree of attention), the victim testified he

24  was paying attention to the codefendants because he was suspicious they "were going to

25  jump out and run" and not pay the cab fare. (Doc. 19-4, Ex. EEE, at 85.)

26      For the third factor (the accuracy of the description), the victim stated the

27  Petitioner wore "baggy shorts, baggy pants." (*Id.* at 100.) The victim testified the

28  Petitioner wore "a long short" that was "tapered a little." (*Id.* at 101.) The officer testified

1    Petitioner was wearing "dark short or dark colored pants" when he was arrested. (*Id*. at

2    48.) Petitioner was cross-examined extensively regarding his description of the pants. (*Id*.

3    at 99-101.) The victim testified "[t]hey both had tattoos" but explained that he did not

4    volunteer information about the tattoos because "[t]attoos are just not that uncommon

5    among young kids." (*Id*. at 99.)

6         For the fourth factor (the witness's level of certainty), the victim stated he

7    recognized the Petitioner "immediately" (*Id*. at 94), and said "I seen his face very clearly,

8    and I just really recognized him immediately" (*Id*. at 94-95).  The victim was 95 percent

9    certain in his identification. (*Id*. at 95.) The officer testified that the victim's identification

10   at the scene was "immediate" and certain. (*Id*. at 20.) The record does not support

11   Petitioner's claim that the victim's certainty was "below average." (Doc. 24 at 36.)

12        For the fifth factor (the length of time between the crime and the confrontation),

13   the victim testified the scene identification was no more than 40 minutes after the

14   incident. (*Id*. at 93-94.)

15        The Arizona Court of Appeals reviewed the record and determined no prejudice

16   "appears affirmatively in the record." *Martinez*, 2010 WL 3366407, at *6. This decision

17   was not based on an unreasonable application of clearly established federal law or an

18   unreasonable determination of the facts.

19             **i. Ground Six**

20        Petitioner asserts the trial court erred "when it denied *Batson* challenge to

21   Petitioner when the State struck a Hispanic juror" (Juror no. 10). (Doc. 24 at 38.) The

22   Arizona Court of Appeals concluded the following:

23             At the conclusion of voir dire, the State exercised one
             of its peremptory challenges to strike venire person no. 10
24           (Juror no. 10). Defendant raised a *Batson* challenge noting he
             and Juror no. 10 are both Hispanic and "[Juror no. 10] never
25           answered any questions." In response, the prosecutor said she
             eliminated Juror no. 10 because he was young, did not have a
26           high school degree and did not use proper English when he
             introduced himself during voir dire by stating, "I ain't been
27           on no jury." As further proof that she did not strike Juror no.
             10 because of his race, the prosecutor noted two other
28           Hispanic panel members would be seated on the jury and
             stated "I don't have a problem with either of them." The court

overruled Defendant's objection finding Juror no. 10's lack of education to be a race-neutral reason for the strike, and the court found Defendant failed to demonstrate racial prejudice to rebut the State's explanation.

…

Here, the prosecutor's proffered reasons for dismissing Juror no. 10 were race-neutral. Defendant's argument regarding the purported pretextual nature of those reasons is essentially a challenge to the prosecutor's credibility. But, "determining the validity of those explanations required the court to evaluate the sincerity of the prosecutor as well as the behavior of the juror [ ]. These are credibility determinations that the court was in the best position to make." *Id*. at 221, ¶ 19, 150 P.3d at 794. "We will not second-guess the trial court's credibility determination, especially when, as here, both parties agree that at least one juror with a Hispanic surname was ultimately chosen." *State v. Garcia*, 224 Ariz. 1, 10, ¶ 27, 226 P.3d 370, 379 (2010) (noting that "[a]lthough not dispositive, the fact that the state accepted other [minority] jurors on the venire is indicative of a nondiscriminatory motive"). Accordingly, on this record, we will not hold that the trial court clearly erred in finding the State's proffered race-neutral reason for striking Juror no. 10 was not pretextual. We therefore affirm the court's order denying Defendant's *Batson* challenge.

*Martinez*, 2010 WL 3366407, at *1.

Here, the Petitioner made a *prima facie* showing that the strike was based upon race, and the prosecutor offered a race-neutral explanation for the strike. *Martinez*, 2010 WL 3366407, at *1.   The issue before the Court is *Batson*'s third step, which is the evaluation of "the persuasiveness of the justification proffered by the prosecutor" to decide whether the defendant has shown purposeful discrimination." *Rice v. Collins*, 546 U.S. 333, 338-339 (2006).   "[A] federal habeas court can only grant [the] petition if it was unreasonable to credit the prosecutor's . . . neutral explanations for the *Batson* challenge." *Rice*, 546 U.S. 338-339. The factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1). In evaluating habeas petitions premised on a *Batson* violation, "our standard is doubly deferential: unless the state appellate court was objectively unreasonable in concluding that a trial court's credibility determination was supported by substantial evidence, we must uphold it." *Briggs v. Grounds*, 682 F.3d 1165, 1170 (9th Cir. 2012) (citing *Rice*, 546 U.S. at 338–42).

Petitioner argues that the juror did not use the word "ain't," which proves the prosecutor misled the trial court. (Doc. 24 at 39.) But the prosecutor also told the court the juror did not "have a high school education." (Doc. 19-5, Ex. LLL, at 119.) Petitioner responds only that the juror "could [have] had a GED." (Doc. 24 at 29.) A lack of education is a non-discriminatory reason for striking a juror. *See United States v. Marin*, 7 F.3d 679, 686-87 (7th Cir. 1993) ("The attainment of a certain educational level has been accepted by numerous circuits as a race neutral criterion for exercising a peremptory challenge under the *Batson* mandate, and, as far as we can determine, has been rejected by none."); *United States v. Alanis*, 265 F.3d 576, 584 (7th Cir. 2002) (upholding dismissal of sole African–American juror for lack of education). Petitioner does not dispute that "two other Hispanic panel members" would be seated on the jury. *Martinez*, 2010 WL 3366407, at *1. "The fact that African–American jurors remained on the panel 'may be considered indicative of a nondiscriminatory motive.'" *Gonzalez v. Brown*, 585 F.3d 1202, 1210 (9th Cir. 2009) (quoting *Turner v. Marshall*, 121 F.3d 1248, 1254 (9th Cir. 1997)).

Petitioner cannot show that the prosecutor engaged in purposeful discrimination as to Juror no. 10. Accordingly, the court of appeal's rejection of Petitioner's *Batson* claim was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court.

### j. Ground Seven

Petitioner asserts he was unconstitutionally detained, in violation of his due process rights, and that "the investigatory stop was not based on reasonable suspicion." (Doc. 7 at 12.) Petitioner acknowledges in his Reply that the argument is predicated on a violation of the Fourth Amendment. (Doc. 24 at 43.) This is not a cognizable claim for federal habeas relief. Under *Stone v. Powell,* 428 U.S. 465 (1976), "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim," federal habeas corpus relief will not lie for a claim that evidence recovered through an illegal search or seizure was introduced at trial. *See also Woolery v. Arave*, 8 F.3d 1325, 1328

(9th Cir. 1993) ("We read *Stone* as a categorical limitation on the applicability of fourth amendment exclusionary rules in habeas corpus proceedings" (citations omitted)). The only question before the Court is whether Petitioner had a fair opportunity to litigate his claim.  *See Ortiz–Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996) ("The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did, in fact, do so, or even whether the claim was correctly decided.") (citations omitted).

Here, Petitioner had multiple opportunities to litigate this issue in the Arizona courts. He filed a "Motion to Suppress Evidence Derived from Illegal Detention/Arrest," which argued a violation of the "Fourth Amendment's protection against unreasonable searches and seizures." (Doc. 19-1, Ex. D, at 17.)  The trial court held a hearing on the motion to suppress.  (Doc. 19-4, Ex. FFF, at 109.)  The Arizona Court of Appeals ruled on Petitioner's argument and determined officers had reasonable suspicion to detain Petitioner. *See Martinez*, 2010 WL 3366407, at *5 ("Because reasonable suspicion existed, the police acted in accordance with the Fourth Amendment when they stopped and temporarily detained Defendant for further investigation.").  Petitioner's claim is not cognizable and must be dismissed.

### k.  Ground Eight

Petitioner alleges a violation of due process based upon the consecutive sentence imposed for the theft of means of transportation conviction. In the Petition, Petitioner only alleges a "violation of Petitioner's 14th Amendment right to due process of law." (Doc. 7 at 13.)  In his Reply, Petitioner asserts "a violation of his Sixth Amendment right to stand trial against his accusers." (Doc. 24 at 45.) He claims that the theft victim (Mr. Mertz) did not testify at trial, and thus "the jury never decided" the theft charge beyond a reasonable doubt. (*Id*. at 46.) The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."

Petitioner's claim in his Reply (confrontation) was not raised in his Petition because his Petition alleged "consecutive sentences violated Petitioner's Fourteenth

Amendment right to due process." (Doc. 7 at 13.) His Reply alleges a Sixth Amendment violation, which requires a dismissal rather than a concurrent sentence.  A reply "is not the proper pleading to raise additional grounds for relief" in a habeas proceeding. *Cacoperdo*, 37 F.3d at 507. The claim raised in his Reply is waived. The claim raised in his Petition (consecutive sentences) is the same claim raised in Ground Four, and is procedurally defaulted and denied for reasons explained in Section III.g above.

Petitioner's new claim is also meritless because the victim testified the codefendant pointed a handgun at him and said "Get out of the cab" (Doc. 19-5, Ex. MMM, at 179), the codefendants "took off" in the cab (*Id*. at 180), and the victim told a bystander he "had just been "robbed" (*Id*.).  Theft of Means of Transportation in violation of A.R.S. § 13-1814(A)(5) requires proof Petitioner knowingly controlled, without lawful authority, another's use of means of transportation knowing that the property was stolen. The testimony of the victim was sufficient to prove this offense, and the victim was subject to cross-examination during trial.

### l.  Ground Nine

Petitioner alleges a violation of his Fourteenth Amendment right to due process occurred because of "improper consideration in determining sentencing." (Doc. 7 at 14.) In his Reply, Petitioner elaborates that (1) the presentence report "was inaccurate in its criminal history" because "it double[d] the Defendant's guilty plea as though he pleaded guilty to two armed robberies back in '02," and (2) Petitioner "was never convicted for two separate victims" in the instant case. (Doc. 24 at 48.)

A misapplication of a state's sentencing law will violate due process only if the misapplication was arbitrary or fundamentally unfair. "Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief." *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994). Here, the court imposed an aggravated sentence based upon the findings that Petitioner was on parole at the time of the offense, the jury found Petitioner had "a prior felony conviction," the threat of serious physical injury, the presence of an accomplice, and the

commission of the offense for pecuniary gain. (Doc. 19-7, Ex. SSS, at 178-179.) The record does not support Petitioner's claim that the court double counted a prior conviction. Petitioner offers nothing more than an allegation. Conclusory allegations will not overcome the presumption that the state court's findings are correct. *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir. 2000). Petitioner's argument regarding two victims is meritless, as outlined in above, because the separate offenses were a result of two separate crimes.

### m. Ground Ten

Petitioner alleges that the State "retaliated against Petitioner for exercising [his] right to trial" in violation of his due process rights under the Fourteenth Amendment. (Doc. 7 at 15.) Petitioner argues that "the fact that the Petitioner went through two separate trials which resulted in hung jury mistrials created the inference that the prosecution wanted to punish the Petitioner by increasing the Petitioner's sentence. . . ." (Doc. 24 at 50.)

Habeas corpus relief cannot be granted unless the state court proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . ." 28 U.S.C. § 2254(d)(1). Petitioner does not argue that the disparity in sentencing was the result of discrimination based on race, sex, or similar grounds that would implicate the federal constitution. Instead, he claims an inference of vindictiveness based upon errors and multiple trials. The fact that a codefendant who pleaded guilty received a lesser sentence is not a violation of due process. *See United States v. Carter*, 560 F.3d 1107, 1121 (9th Cir. 2009) (sentencing disparity based on codefendants having pleaded guilty instead of going to trial not unreasonable). The trial judge based the sentence upon Petitioner's criminal history and the facts of the case. Petitioner's allegation of an inference of vindictiveness, which is not supported in the record, is insufficient to merit relief.

### n.  Ground Eleven

Petitioner asserts a violation of due process based upon the trial court's "not

allowing the Petitioner to present to the jury the newly discovered evidence." (Doc. 24 at 51.)  Petitioner alleges he discovered new evidence that he possessed $8.95 at the time of the offense, which would have corroborated his defense that he was intending to take a bus ride. He states that he "didn't discover a receipt to the 4th Avenue jail store until after closing arguments" and he was prevented from presenting it to the jury. As outlined in Ground Three above, the prosecutor told the jury that the jail records indicated Petitioner possessed $8.95 at the time of the offense. The witness, however, testified that she believed that money was in fact in the possession of the codefendant. The jurors were aware of at least one jail record, and Petitioner's second document was at best cumulative. Thus, Petitioner cannot establish that any error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637.

### o.  Ground Twelve

Petitioner reasserts his claim that he was denied the presumption of innocence "after the State's leading witness stated that I had a previous trial…." (Doc. 24 at 54.) This is the same claim presented and rejected above (Section III.e.ii).

## IV.   EVIDENTIARY HEARING

The record is sufficiently developed and the Court does not find that an evidentiary hearing is necessary for resolution of this matter.  *See Rhoades v. Henry*, 638 F.3d 1027, 1041 (9th Cir. 2011).

## CONCLUSION

Based on the above analysis, the Court finds that Petitioner's claim in Ground One is procedurally defaulted. Petitioner's claim in Ground Seven is not cognizable.  The Court finds all of Petitioner's remaining claims fail.  The Court will therefore recommend that the Amended Petition for Writ of Habeas Corpus (Doc. 7) be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that the Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 7) be **DENIED** and **DISMISSED WITH PREJUDICE**.

1    **IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and

2    leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the

3    Amended Petition is justified by a plain procedural bar and jurists of reason would not

4    find the procedural ruling debatable, and because Petitioner has not made a substantial

5    showing of the denial of a constitutional right.

6    This recommendation is not an order that is immediately appealable to the Ninth

7    Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules

8    of Appellate Procedure, should not be filed until entry of the district court's judgment.

9    The parties shall have 14 days from the date of service of a copy of this Report and

10   Recommendation within which to file specific written objections with the Court.  *See* 28

11   U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72.  Thereafter, the parties have 14 days

12   within which to file a response to the objections.

13   Failure to timely file objections to the Magistrate Judge's Report and

14   Recommendation may result in the acceptance of the Report and Recommendation by the

15   district court without further review.  *See United States v. Reyna-Tapia*, 328 F.3d 1114,

16   1121 (9th Cir. 2003).  Failure to timely file objections to any factual determinations of

17   the Magistrate Judge will be considered a waiver of a party's right to appellate review of

18   the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's

19   Report and Recommendation.  *See* Fed. R. Civ. P. 72.

20   Dated this 28th day of January, 2016.

21

22

23                                                           Honorable John Z. Boyle
                                                             United States Magistrate Judge
24

25

26

27

28